Timothy J. Forwood
Wyoming State Bar No. 6-4120
Assistant United States Attorney
District of Wyoming
P.O. Box 668
Cheyenne, WY 82003
(307) 772-2124
timothy.forwood@usdoj.gov

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| Plaintiff, | |
| v. | Criminal No. 23-CR-53-S |
| **TRAQUEVIS DEWAYNE HARDY,** | |
| Defendant. | |

## NOTICE OF INTENT TO OFFER RULE 404(b) EVIDENCE

The United States hereby gives notice of its intent to offer evidence at trial that may be governed by Rule 404(b) of the Federal Rules of Evidence.

The grand jury charged the Defendant with conspiracy to distribute fentanyl in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). (Doc. 1).

At trial, the United States intends to offer evidence and testimony regarding the Defendant's arrest on April 25, 2023, at which time the Defendant was in possession of nine fentanyl pills. This evidence *may* include evidence from the investigation, surveillance, arrest, searches and any statements related to the Defendant's arrest on April 25, 2023.

Additionally, the United States may offer evidence and testimony regarding the Defendant's prior convictions for felony controlled substance violations out of Laramie County,

Wyoming, and Larimer County, Colorado in 2018. This evidence *may* include evidence from the investigation, surveillance, arrest, searches and any statements related to the Defendant's arrest for these two controlled substance convictions.

By providing this notice, the United States does not concede the proposed evidence is governed by Rule 404(b). Rather, the United States expressly reserves the right to seek introduction of any evidence through other appropriate evidentiary rules or law. The United States also reserves the right to supplement this notice with additional evidence or argument.

## I.     FACTS

### a.  This Case

Over the time span of the conspiracy, the Defendant was involved in multiple distributions of thousands of fentanyl pills to numerous individuals in Cheyenne, Wyoming, area.

On September 28, 2022, law enforcement conducted a custodial interview with LS at the Cheyenne Police Department. Throughout the course of the interview, LS stated her main source of supply for fentanyl pills was the Defendant (HARDY), and he was currently residing in hotels in Denver, Colorado. LS stated HARDY moved to Denver, Colorado, approximately four months prior to this interview, approximately late May 2022. LS began purchasing fentanyl pills from HARDY in late May 2022. LS stated she began receiving approximately 20 fentanyl pills approximately every three days for a few weeks, then began receiving approximately 50 fentanyl pills approximately every three days for a couple of weeks. LS admitted she began purchasing approximately 100 fentanyl pills from HARDY every other day since the end of August 2022. LS stated HARDY's prices fluctuated based on how many fentanyl pills she purchased. LS admitted when she purchased 100 fentanyl pills from HARDY, she would attempt to sell 20 of the fentanyl pills to make enough money to purchase more fentanyl pills from HARDY. During the interview

with LS, allowed law enforcement agents to look through messages on her cellular phone. Facebook Messenger conversations between LS and a Facebook profile LS had renamed "plugwalk." Law enforcement observed the Facebook profile photograph for the account to contain several photographs of HARDY. LS admitted the Facebook profile she named "plugwalk" was the Facebook profile for HARDY. The following was a portion of the Facebook Messenger conversation between LS and HARDY:

| SENDER | MESSAGE | DATE |
|---|---|---|
| LS | On top of my order…3 for 6? | 09/21/22 |
| HARDY | Hundo? | 09/21/22 |
| HARDY | I don't get what your asking me ? | 09/21/22 |
| LS | 300 for 600 | 09/21/22 |
| HARDY | Ya | 09/21/22 |
| LS | K | 09/21/22 |
| LS | Almost there | 09/21/22 |

Based upon law enforcement's training and experience and from the interview with LS, when LS stated, "300 for 600," LS was asking for 300 fentanyl pills for $600.00, which HARDY agreed to.

Then on October 7, 2022, law enforcement conducted a non-custodial interview with a confidential source of information (CS). During the interview, CS stated he/she purchased fentanyl pills from HARDY. CS stated he/she began purchasing fentanyl pills from HARDY for over the last year. CS stated he/she purchased approximately 100 fentanyl pills from HARDY approximately every two or three days for the previous year. CS stated since HARDY moved to the Denver area, he/she paid $250.00 for 100 fentanyl pills. CS stated HARDY previously lived in Cheyenne, Wyoming, but moved to the Denver metropolitan area around August 2022. CS stated HARDY stayed at different hotels in the Denver area. CS admitted he/she observed HARDY in possession of approximately 1,000 fentanyl pills on a couple of occasions when he/she

purchased fentanyl pills from him. CS stated he/she communicated with HARDY on Facebook Messenger. During the course of the interview, CS allowed law enforcement to look through the Facebook Messenger conversation with HARDY. The Facebook profile named "Tray Hardy," was the profile the CS used to communicate with HARDY. Law enforcement observed the Facebook profile photograph for the account to contain several photographs of HARDY. Law enforcement observed several messages between CS and HARDY that indicated HARDY was CS's source of supply for controlled substances.

On October 25, 2022, Cheyenne Police Department officers were dispatched to Capitol City Storage on Polk Avenue in Cheyenne, Laramie County, Wyoming, on a report of a subject asleep in a vehicle. Cheyenne Police Department Officers arrived on scene and ultimately contacted DA asleep in a 2008 silver Honda four door sedan. Officers placed DA under arrest and during a subsequent search of the vehicle and DA's person, officers located approximately 23.94 grams of suspected fentanyl pills (with packaging) between DA's person and the vehicle. Also located during the search of the vehicle was DA's Samsung cellular phone.

On November 14, 2022, a Laramie County Circuit Court search warrant for DA's blue Samsung cellular phone was obtained. During the review of the cellular phone, law enforcement located a Facebook Messenger conversation between DA and a Facebook profile named "Tray Hardy," with a Facebook ID of 1845800523. The Facebook Messenger conversation indicated that "Tray Hardy" was a source of supply of fentanyl pills for DA. The following was a portion of the Facebook Messenger conversation between DA and "Tray Hardy":

| SENDER | MESSAGE | DATE |
|---|---|---|
| DA | Just left lil bit ago | 10/21/22 |
| Tray Hardy | How much. Uou need ? Cuz my boy gonna bring it too me | 10/21/22 |
| DA | Half boat | 10/21/22 |

Law enforcement knows from training, experience and local drug trends that "boat" is a

4

slang term used for 1,000 fentanyl pills. When DA sent the message "half boat," he was referring to 500 fentanyl pills.

On December 6, 2022, a search warrant for HARDY's Facebook account was obtained. In reviewing the account, law enforcement found numerous messages consistent with drug distribution. One message showed that HARDY distributed 1500 (boat and a half) fentanyl pills over two days.

On February 10, 2023, law enforcement interviewed confidential source of information CS-2. CS-2 stated that he/she traveled with HARDY on four different occasions to Colorado to purchase fentanyl. He/she purchased 100 pills for $200 the first trip, 100 pills for $350 the second trip, and 100 pills for $300 on the third and fourth trips.

   b.  **Arrest of the Defendant on April 15, 2023**

On April 15, 2023, Cheyenne Police Department was dispatched to the Quality Inn, Cheyenne, Wyoming, regarding the use and possession of narcotics. CPD Officer Talmage Peden was directed by the reporting person to a silver Volkswagen sedan. Officer Peden contacted the occupants of this vehicle. The passenger was identified as the Defendant, Traquevis Hardy (HARDY). Officer Peden ran a warrants check on HARDY and it was confirmed that HARDY had a warrant out of Laramie County.

HARDY was removed from the passenger seat and five suspected fentanyl pills were found where the HARDY's left leg had been resting on the seat. Another suspected fentanyl pill was located on the floorboard by the HARDY's right foot and three fentanyl pills were located between the HARDY's seat and the center console of the vehicle. CPD Officer Corrin Campbell located on the driver a suspected fentanyl pill burned onto metal foil.

### c. Defendant's Prior Convictions

The Defendant has two prior felony drug convictions for controlled substance violations.

### 1. May 2018 Felony Conviction - Delivery of Methamphetamine, Laramie, County, Wyoming

On Sunday, May 13, 2018, Wyoming Highway Patrol Trooper Logan Kelley was dispatched to a REDDI report coming into Wyoming, northbound on 1-25 from Colorado. Trooper Kelley was informed the suspect vehicle stopped at the EXXON gas station at 2310 W. Lincolnway in Cheyenne, Wyoming. Trooper Kelley arrived at the gas station at approximately and observed a vehicle matching the suspect vehicle's description (dark colored sedan) parked near a fuel pump at that location. Trooper Kelley positioned his patrol vehicle on the other side of the fuel island and did not activate his emergency lights. Trooper Kelley approached the suspect's vehicle and observed it was occupied by a male who was exiting the driver-side, later identified as Traquevis Hardy (HARDY), and female who was seated in the front-passenger seat which was later identified as Lisa Rench. Trooper Kelley approached HARDY and asked if he could talk to him. HARDY agreed to speak to Trooper Kelley. Trooper Kelley informed HARDY he had received a report he had been swerving while driving on 1-25. HARDY did state he had swerved on 1-25 one time and drove onto the rumble strips on the shoulder of the road. Trooper Tyler Matheney was also on scene and asked HARDY if they could check his driver's license. HARDY agreed to allow a check of his driver's license and presented it to the Troopers. Upon entering HARDY 's driver's license information into the computer system, Trooper Kelley observed HARDY had two active arrest warrants from Laramie County. The warrants were confirmed, and HARDY was placed under arrest for the active warrants.

After HARDY was taken into custody, Trooper Adam Powell and a Sheriff's Deputy from the Laramie County Sheriff's Office who were also on scene spoke to Rench while she was still

6

seated in the front, passenger seat of the vehicle. Trooper Powell and the Deputy advised that Rench had informed them HARDY and she were coming to Cheyenne to stay at the Motel 6 for the night. Rench had stated HARDY had missed a flight to Georgia earlier in the day and he had another flight to Georgia the following day. Both HARDY and Rench lived in Colorado. The Deputy informed Trooper Kelley he felt Rench's story didn't make sense. Trooper Kelley observed the vehicle belonged to Rench. Troopers Powell and Kelley spoke with Rench and explained to her that because HARDY's warrants included prior possession of a controlled substance they were was concerned there may be controlled substances present inside the vehicle. Rench was asked for consent to a search of her vehicle. Rench agreed to a search of her vehicle and stated she thought there was a "'roach" (burnt marijuana cigarette butt) inside the vehicle. Upon opening of the passenger door of the vehicle a methamphetamine glass pipe located between the passenger seat and door of the vehicle, directly beside where Rench had been sitting moments earlier. The pipe appeared to have been burnt on the end and there was a white, powdery residue inside of it. The search of the vehicle revealed syringes and a "kit" with items commonly associated with intravenous drug use. Trooper Powell asked Rench if he could look inside her purse which she still had possession of and she denied consent saying the contents were "personal." Based upon having already located suspected methamphetamine inside the vehicle near where Rench had been seated the Troopers searched her purse. Inside the purse was a glass pipe with suspected marijuana residue and a "bindle" which contained suspected marijuana in plant form. Rench was placed under arrest possession of a controlled substance (plant and powder/crystal).

   During the search of Rench's person at the jail, it was discovered Rench had concealed three small baggies of suspected methamphetamine inside her bra. The suspected methamphetamine weighed approximately 14.6 grams in a purple bag, 1. 9 grams in a small clear

7

bag, and 1.7 grams in a separate clear bag. HARDY refused to answer any questions about the methamphetamine. Rench claimed two of the three baggies belonged to her and the larger one belonged to HARDY. Rench stated HARDY tossed her the bag when he observed Trooper Kelley's patrol car approaching. Trooper Kelley observed the largest of the three baggies contained a substantially greater quantity of suspected methamphetamine. Based on the quantity of suspected methamphetamine in the bag which Rench stated belonged to HARDY, it was apparent he would not be able to use that quantity of the substance before his flight the following day. Rench also stated HARDY told her he had no money and he was planning on meeting an unknown person at the Motel 6 in Cheyenne. Trooper Matheney asked Rench if HARDY was planning on selling the methamphetamine to someone in Cheyenne and she stated she didn't want to say because she loved HARDY.

On May 15, 2018, HARDY was charged in Laramie County, Wyoming, with 1) conspiracy to deliver methamphetamine, a felony; 2) delivery of methamphetamine, a felony; 3) possess with intent to deliver of methamphetamine, a felony; and 4) possession of methamphetamine, a felony. *See* Exhibit 1 (Amended Information, Docket Number 33-969). On August 29, 2019, HARDY pled guilty to delivery of methamphetamine, a felony. *See* Exhibit 2 (Judgment and Sentence, Docket Number 33-969).

    **2.**    **December 22, 2018, Felon Conviction – Possession of a controlled Substance, Larimer County, Colorado**

On December 12, 2018, while on patrol in the area of East Mulberry and Remington Streets in Fort Collins, Colorado, Officer Samuel Roth observed blue Honda sedan traveling westbound on East Mulberry Street. Officer Roth observed the vehicle had a license plate cover that was so dirty and somewhat tinted that it could not read from 20 feet away. Officer Roth also observed a

crack in the middle of the windshield which would obstructing the driver's vision. Officer Roth contacted the driver who was identified as Chelsea Payne.

Officer Roth approached the driver's side window and observed a male passenger, who was identified as Traquevis Hardy (HARDY), had a glass pipe on his lap that looked to be used to smoke drugs. Officer Roth observed HARDY quickly move he pipe off of his lap onto the floorboard. HARDY tried to hide the pipe. Officer Roth asked HARDY to hand the pipe over but HARDY kept trying to hide it.

Before Office Roth arrested Payne for driving under the influence of drugs, he asked her for consent to search of the vehicle. Payne provided consent to search. Before Officer Roth could begin the search, he saw in plain view, a glass pipe used to smoke methamphetamine on the front passenger's seat. Officer Roth located a brown colored zippered pouch between the passenger's seat and the center console. Inside the zippered bag was a plastic baggie with a white crystal substance consistent with methamphetamine. HARDY was arrested and located in his shoe was an additional baggie containing methamphetamine.  Officer Roth conducted a field test on the substance, and it tested positive for methamphetamine. Officer Roth also located and seized another pipe to smoke methamphetamine and a digital scale underneath the passenger seat. HARDY was charged with possession of a controlled substance and possession of drug paraphernalia. HARDY pled guilty to felony possession of a controlled substance. The possession of drug paraphernalia charge was dismissed. *See* Exhibit 3 (Sentencing Order, Case Number 2018CR003244).

## II. ARGUMENT

The identified evidence of the Defendant's possession of fentanyl at the time of his arrest on April 15, 2023, and his two prior convictions for controlled substance violations are admissible

and would be properly admitted under Fed. R. Evid. 404(b). Evidence of crimes, wrongs, or other acts is prohibited under the Federal Rules of Evidence when used "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Such evidence is permitted, however, "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). To determine whether Rule 404(b) evidence is properly admitted, the Court must look to the four-part test from *Huddleston v. United States*, 485 U.S. 681 (1988):

> (1) The evidence must be offered for a proper purpose under Rule 404(b);
>
> (2) The evidence must be relevant under Rule 401;
>
> (3) The probative value of the evidence must not be substantially outweighed by its potential for unfair prejudice under Rule 403; and
>
> (4) The district court, upon request, must have instructed the jury pursuant to Rule 105 to consider the evidence only for the purpose for which it was admitted.

*See United States v. Rodella*, 804 F.3d 1317, 1333 (10th Cir. 2015).

### 1. The evidence is offered for a proper purpose.

The first *Huddleston* factor requires the evidence be offered for a proper purpose under Rule 404(b). "Evidence is offered for a proper purpose if it is utilized for any of the 'other purposes' enumerated in Rule 404(b)," *United States v. Davis*, 636 F.3d 1281, 1298 (10th Cir. 2011), and that enumerated list "is illustrative, not exhaustive," *United States v. Brooks*, 736 F.3d 921, 939 (10th Cir. 2013) (*citing United States v. Tan*, 254 F.3d 1204, 1208 (10th Cir. 2001)). "Rule 404(b) is considered to be an inclusive rule, admitting all evidence of other crimes or acts except that which tends to prove only criminal disposition." *Brooks*, 736 F.3d at 939.

Under the first prong of *Huddleston,* the evidence of the Defendant's possession of fentanyl and his prior convictions are offered here for a proper purpose - to establish plan, motive, intent, knowledge, or absence of mistake. *See United States v. Ramirez*, 63 F.3d 937, 943 (10th Cir. 1995) (listing cases). Prior and ongoing narcotics involvement is relevant to prove knowledge and intent when that evidence "is close in time, highly probative, and similar to the activity with which the defendant is charged." *United States v. Reynoso*, 398 F. Supp. 3d 1115, 1122 (D.N.M. 2019) (quoting *United States v. Becker*, 230 F.3d 1224, 1232 (10th Cir. 2000)). The Defendant's ongoing narcotic involvement (possession of fentanyl on April 15, 2023) and his prior narcotics convictions are probative on the issue of whether he *knowingly* entered into the charged conspiracy with *intent* and *plan* to distribute a controlled substance. The evidence also demonstrates that his actions in the present case -- obtaining and distributing fentanyl was not the result of *mistake* or *accident*. These purposes, specifically knowledge and intent, are specifically contemplated by Rule 404(b), and are, therefore, plainly proper. *See* Fed. R. Evid. 404(b)(2) (listing "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident"). The first *Huddleston* factor is thus satisfied.

    **2.**    **The evidence is relevant under Rule 401.**

The second *Huddleston* factor requires that the evidence be relevant under Rule 401. Evidence is relevant if: (1) "it has any tendency to make a fact more or less probable than it would be without the evidence;" and (2) "the fact is of consequence in determining the action." Fed. R. Evid. 401. In other words, "[r]elevant evidence tends to make a necessary element of an offense more or less probable." *Davis*, 636 F.3d at 1298.

"The lynchpin of *Huddleston* relevance is similarity." *United States v. Henthorn*, 864 F.3d 1241, 1249 (10th Cir. 2017). "To determine the relevance of a prior bad act, [the court must] look

to the similarity of the prior act with the charged offense, including their temporal proximity to each other." *Brooks*, 736 F.3d at 940. Uncharged acts are admissible "as long as the uncharged acts are similar to the charged crime and sufficiently close in time." *United States v. Mares*, 441 F.3d 1152, 1157 (10th Cir. 2006) (citing *United States v. Zamora*, 222 F.3d 756, 762 (10th Cir. 2000)). "[T]he degree to which factors such as temporal distance and geographical proximity are important to a determination of the probative value of similar acts will necessarily depend on the unique facts of each case's proffered evidence." *Mares*, 441 F.3d at 1159.

Evidence's relevance cannot "depend on a defendant likely acting in conformity with an alleged character trait" or require the jury to draw a "chain of inferences dependent upon [a] conclusion" about the defendant's character. *See United States v. Commanche*, 577 F.3d 1261, 1267, 1269 (10th Cir. 2009). But all this is "not to say that other-act evidence must be excluded whenever a propensity inference can be drawn; rather, Rule 404(b) excludes the evidence if its relevance to 'another [proper] purpose' is established only through the forbidden propensity inference." *United States v. Rodella*, 804 F.3d 1317, 1333 (10th Cir. 2015).

Evidence remains admissible even if it has the potential "impermissible side effect of allowing the jury to infer criminal propensity," so long as the jury "[i]s not *required* to make any such inferences in order to also" find willfulness or intent, or any of the other proper purposes allowed under Rule 404(b). *See Henthorn*, 864 F.3d 1241, 1251-52, quoting *Rodella,* 804 F.3d at 1333-34 (emphasis in original). The court in *Henthorn* explained this nuance through *United States v. Moran*, 503 F.3d 1135 (10th Cir. 2007). *Henthorn*, 864 F.3d at 1252. In *Moran*, the district court presiding over defendant Moran's trial for being a felon in possession of a firearm allowed the government to present evidence of Moran's prior felon-in-possession conviction. *Moran,* 503 F.3d at 1138-39. While the use of Moran's prior conviction to help prove the only challenged

12

element of the charged offense (*i.e.*, that Moran "knowingly possessed" the firearm) "involve[d] a kind of propensity inference (*i.e.*, because he knowingly possessed a firearm in the past, he knowingly possessed the firearm in the present case)," the court explained that the inference "did not require a jury to first draw the forbidden general inference of bad character or criminal disposition." *Id.* at 1145. Instead, the inference was "specific" and "rest[ed] on a logic of improbability that recognizes that a prior act involving the same knowledge decreases the likelihood that the defendant lacked the requisite knowledge in committing the charged offense." *Id.*

Under the second prong, the evidence of the Defendant's drug possession on April 15, 2023, and the Defendant's prior drug convictions are highly relevant. The government is required to prove, as elements of the charge in the Indictment that the Defendant knowingly entered into the conspiracy to distribute fentanyl which is at issue in this case. The proffered evidence is relevant to establish both the general and specific intent required. The Tenth Circuit has "long recognized the relevance of previous wrongs and crimes in the context of narcotics violations." *United States v. Conway*, 73 F.3d 975, 981 (10th Cir. 1995) (evidence of defendant's three prior crack cocaine arrests was admissible in subsequent narcotics prosecution as probative of common plan, knowledge and intent) (internal citations omitted).

Here, the proffered evidence of the Defendant's possession of fentanyl on April 15, 2023, has similarities to the offense charged in this case including the temporal proximity to each other, the sufficiently close in time of the evidence to the charged offense and geographical proximity. Additionally, the Defendant's prior convictions involve circumstances that are strikingly similar to the instant offense and the April 15, 2023, possession of fentanyl. The probative value of this evidence is not substantially outweighed by the danger of unfair prejudice. Of course, some danger

for prejudice will always arise merely from disclosing a prior uncharged bad acts to a jury, but that danger must substantially outweigh the probative value of the proffered evidence. In this case, the probative value of the recent uncharged bad act and prior drug convictions far outweighs any danger of prejudice. The prior drug convictions and the April 15, 2023, possession of fentanyl makes this evidence highly probative on issues such as plan, knowledge, intent, absence of mistake, or accident. Because the proffered evidence is offered for the proper purposes under Rule 404(b) and is relevant the second *Huddleston* factor is met.

### 3. The probative value of the evidence is not substantially outweighed by its potential for unfair prejudice under Rule 403.

The third *Huddleston* factor requires the evidence's probative value not be substantially outweighed by its potential for unfair prejudice. Fed. R. Evid. 403 directs that a court may exclude evidence if its "probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." The exclusion of evidence under Rule 403 "is an extraordinary remedy and should be used sparingly." *Brooks*, 736 F.3d at 940 (quoting *United States v. Tan*, 254 F.3d 1204, 1211 (10th Cir. 2001)).

"Evidence is unfairly prejudicial if it makes a conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant *wholly apart* from its judgment as to his guilt or innocence of the crime charged." *Henthorn*, 864 F.3d at 1256, quoting *United States v. Mackay*, 715 F.3d 807, 840 (10th Cir. 2013) (citation omitted) (emphasis in original). "In engaging in the requisite balancing," courts "give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value." *Id.,* quoting *United States v. Cerno*, 529 F.3d 926, 935 (10th Cir. 2008). And "it is not enough that the risk of unfair prejudice be greater than the probative value of the evidence; the

danger of that prejudice must substantially outweigh the evidence's probative value." *Id.* "The trial court has broad discretion to determine whether prejudice inherent in otherwise relevant evidence outweighs its probative value." *Id.*

Presentation of the Defendant's fentanyl possession of April 15, 2023, and his two prior drug convictions does not call for the jury to convict the Defendant on an improper basis. And, as explained above, the possession of fentanyl on April 15, 2023, and the prior drug convictions are highly probative to the charged conduct. Therefore, their probative value is not substantially outweighed by the danger of unfair prejudice and the third *Huddleston* factor is satisfied.

### 4. The district court will instruct the jury pursuant to Rule 105 to consider the evidence only for the purpose for which it was admitted.

The fourth and final *Huddleston* factor requires the district court, upon request, to instruct the jury to consider the evidence only for the purpose for which it was admitted. "If a court admits evidence that is admissible ... for a purpose – but not ... for another purpose – the court, on timely request, must restrict the evidence to its proper scope and instruct the jury accordingly." Fed. R. Evid. 105. For example, "[a] limiting instruction cautions the jury that the Rule 404(b) evidence should be considered only for the purposes for which it was admitted and not as evidence of the defendant's character or propensity to commit an offense." *Davis*, 636 F.3d at 1298. It is the common practice of this court to include such a limiting instruction, and "absent a showing to the contrary, there is a presumption that jurors will conscientiously follow the trial court's instructions." *Brooks*, 736 F.3d at 941. The final *Huddleston* factor can be met.

### III. CONCLUSION

Here the Defendant's possession of fentanyl on April 15, 2023, and his prior drug convictions demonstrates the Defendant's identity, knowledge, intent, common scheme and plan, lack of mistake/accident, related to his drug trafficking activities is admissible under the accepted

15

principles set forth in Rule 404(b). Having notified the Court and the Defendant of the proposed prior evidence, explained its proper purpose, its relevance, and the absence of unfair prejudice, the United States requests the Court find the evidence is admissible at trial under Fed. R. Evid. 403 or 404(b).

DATED this 11th day of September, 2023.

NICHOLAS VASSALLO
United States Attorney


By: */s/ Timothy J. Forwood*
TIMOTHY J. FORWOOD
Assistant United States Attorney


**CERTIFICATE OF SERVICE**

I hereby certify that on the 11th day of September, 2023, the foregoing was electronically filed and consequently served on defense counsel.

*/s/ Lisa Wait*
For the United States Attorney's Office