Timothy J. Forwood
Wyoming State Bar No. 6-4120
Assistant United States Attorney
District of Wyoming
P.O. Box 668
Cheyenne, WY 82003
(307) 772-2124
timothy.forwood@usdoj.gov

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| Plaintiff, | |
| **v.** | **Criminal No. 23-CR-53-S** |
| **TRAQUEVIS DEWAYNE HARDY,** | |
| Defendant. | |

## GOVERNMENT'S NOTICE OF INTENTION TO
## OFFER INEXTRICABLY INERTWINED EVIDENCE

**COMES NOW** the United States of America, by and through its attorney, Timothy J. Forwood, Assistant United States Attorney for the District of Wyoming, and gives notice of its intent to offer evidence of the uncharged distribution of methamphetamine by the defendant during the conspiracy charged in this matter. The United States believes this evidence is inextricably intertwined with the acts charged in the Indictment and, therefore, is not Rule 404(b) evidence.  In the alternative, and out of an abundance of caution, the United States gives notice pursuant to Federal Rule of Evidence 404(b) of the government's intent to offer this evidence as evidence of the defendant's intent, motive, lack of mistake, knowledge, and common scheme or plan.

## I.       PROCEDURAL BACKGROUND

On May 17, 2023, the grand jury charged the Defendant with conspiracy to distribute fentanyl in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). (Doc. 1). The trial in this matter is scheduled to take place on October 23, 2023. (Doc. 59).

## II.      EVIDENCE AT ISSUE

Over the time span of the conspiracy, the Defendant was involved in multiple distributions of thousands of fentanyl pills to numerous individuals in the Cheyenne, Wyoming, area.

On October 25, 2022, Cheyenne Police Department officers were dispatched to Capitol City Storage on Polk Avenue in Cheyenne, Laramie County, Wyoming, on a report of a subject asleep in a vehicle. Cheyenne Police Department Officers arrived on scene and ultimately contacted Derek Ascherin asleep in a 2008 silver Honda four door sedan. Officers placed Ascherin under arrest and during a subsequent search of the vehicle and Ascherin's person, officers located methamphetamine and fentanyl pills. Also located during the search of the vehicle was Ascherin's Samsung cellular phone.

On November 14, 2022, a Laramie County Circuit Court search warrant for Ascherin's blue Samsung cellular phone was obtained. During the review of the cellular phone, law enforcement located Facebook Messenger conversations between Ascherin, and a Facebook profile named "Tray Hardy," with a Facebook ID of 1845800523. The Facebook Messenger conversation indicated that "Tray Hardy" was a source of supply of fentanyl pills for Ascherin.  In Ascherin's phone were other Facebook messages where he was negotiating deals with others for "zips" and "illys." Specifically, on August 13, 2022, Ascherin asked "Tray Hardy", "Any word on that 120? Also the clear I got was 2.5 g short… The clear was through that other guy cause she didn't have any..and the 120 is for the dark I never got." "Clear" refers to methamphetamine, and "dark" refers to heroin.

On December 6, 2022, a search warrant for the Defendant's Facebook account was obtained. In reviewing the account, law enforcement found numerous messages consistent with drug distribution, not just fentanyl, but also other controlled substances consistent with methamphetamine. The following are examples of these conversations:

- Hardy and MR

    MR:    400 for both still?

    Hardy: Ya

    MR:    How much for a whole of shit

    Hardy: Oz??

    MR:    Yes

    Hardy: 200

    MR:    Can you meet me in foco

    Hardy: Not for tthast price I will come to Firestone or longmont

    Hardy: Shit if u evenade a attempt to pay me whatvu owed me I would do the illys for 2.50 and zips for 170 for u

    - o  In this conversation MR and Hardy are negotiating a deal for "illys" (fentanyl) and "zips" (methamphetamine). Without the full conversation, the witnesses' testimony about this Facebook conversation will be incomplete.

- Hardy and OM

    Hardy: Hey

    Hardy: 2 50 a pop just for u

    …

    OM:    so you actually got those ???

    Hardy: Ya. Keah ab crystal just left with a couple hundo bout hr ago

    Hardy: Man I dint play games like that an I will hold some back fir u if u gonna

come get them

…

Hardy: I goy bout 70 left o can get more with no problem. Who it's for lol

OM:     will you pls hold the 70.

OM:     ill be down soon

OM:     lmk how many you got forsure

Hardy: I just. Told u an I can have more in a matter if minutes

OM:     can you get 100 for me please

…

Hardy: Yes I got it but hey I am stuck outside an can't get ahold of anyone an my
        bellonginfs are locked in my room that I can't get access to my shit cuz they
        are holding it til I pay the smoking fine so if u would would u please cashapp
        me 50 of the money for the blues so I can pay them the350 that I need to
        allow them to let me get my stuff out the room I will throw in a few extra
        illta an some clear along with the Hindo I have for u

   o    In this conversation, "clear" refers to methamphetamine and "blues" refers
        to fentanyl. Without the full conversation, the witnesses' testimony about
        this Facebook conversation will be incomplete.

- Hardy and SW

   SW:     do you have any blues

   …

   Hardy: I zm in Colorado

   SW:     damn

   SW:     where at

   Hardy: Aurora I got you for the low low tho

   SW:     how much

   SW:     are they fire like last time

   …

4

SW:    and do u have clear bro

Hardy: Aurora

SW:    ok

SW:    do u Have clear

Hardy: Ya how much you need of each

SW:    we can't wake our asses up

SW:    fuck yes thank u so much

Hardy: I got you

In total, law enforcement discovered messages between Hardy and over 30 individuals relating to the sale and distribution of fentanyl. As demonstrated above, these messages referred not only to fentanyl, but other controlled substances as well.

## III.    LEGAL ANALYSIS

### A.  <u>The Proposed Evidence Is Not 404(b) Evidence, but Is Integrally Intertwined</u>

Evidence of the Defendant's drug trafficking activities including the distribution of other controlled substances besides fentanyl during the conspiracy is *res gestae* to the case against the Defendant, making it admissible against him without reference to Fed. R. Evid. 404(b). "While Rule 404(b) precludes evidence of 'other crimes, wrongs or acts,' it does not apply to testimony offered as direct evidence of charged crimes."  *United States v. Portillo-Quezada*, 469 F.3d 1345, 1353 (10th Cir. 2006). "Rule 404(b) only applies to evidence of acts extrinsic to the charged crime." *United States v. Lambert*, 995 F.2d 1006, 1007 (10th Cir. 1993) (quotations omitted). Evidence of other criminal conduct/activity is admissible "when those facts come in as *res gestae* – as part and parcel of the proof of the offense charged in the indictment," as well as when it "provides the context for the crime, is necessary to a full presentation of the case, or is appropriate in order to complete the story of the crime on trial by proving its immediate context or the *res*

*gestae.*" *United States v. Kimball*, 73 F.3d 269, 272 (10th Cir. 1995) (citing and quoting *United States v. Gano*, 560 F.2d 990, 993 (10th Cir. 1977), and *United States v. Masters*, 622 F.2d 83, 86 (4th Cir. 1980)).

Here, the Defendant's drug trafficking activities provides the context for the crime and is necessary to understand the context of the crime charged.  As such, the government does not believe this evidence falls under the purview of Federal Rule of Evidence 404(b). Rather the government submits the evidence is part of the charged offense. Even if the Court determined this evidence was not intertwined with the charged conduct, it is properly admissible under Rule 404(b) as explained below.

B. **The Evidence is Admissible Under Fed. R. Evid. 404(b) to Demonstrate Knowledge, Intent, Identity, Common Scheme and Plan, Lack of Accident or Mistake**

The identified evidence of the Defendant's drug distribution of other controlled substances is admissible and would be properly admitted under Fed. R. Evid. 404(b).  Evidence of crimes, wrongs, or other acts is prohibited under the Federal Rules of Evidence when used "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1).  Such evidence is permitted, however, "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b)(2).  To determine whether Rule 404(b) evidence is properly admitted, the Court must look to the four-part test from *Huddleston v. United States*, 485 U.S. 681 (1988):

(1)     The evidence must be offered for a proper purpose under Rule 404(b);

(2)     The evidence must be relevant under Rule 401;

(3)     The probative value of the evidence must not be substantially outweighed by its potential for unfair prejudice under Rule 403; and

(4)     The district court, upon request, must have instructed the jury pursuant to Rule 105 to consider the evidence only for the purpose for which it was admitted.

*See United States v. Rodella*, 804 F.3d 1317, 1333 (10th Cir. 2015).

      **1.**     **The evidence is offered for a proper purpose.**

The first *Huddleston* factor requires the evidence be offered for a proper purpose under Rule 404(b). "Evidence is offered for a proper purpose if it is utilized for any of the 'other purposes' enumerated in Rule 404(b)," *United States v. Davis*, 636 F.3d 1281, 1298 (10th Cir. 2011), and that enumerated list "is illustrative, not exhaustive," *United States v. Brooks*, 736 F.3d 921, 939 (10th Cir. 2013) (*citing United States v. Tan*, 254 F.3d 1204, 1208 (10th Cir. 2001)). "Rule 404(b) is considered to be an inclusive rule, admitting all evidence of other crimes or acts except that which tends to prove only criminal disposition." *Brooks*, 736 F.3d at 939.

Under the first prong of *Huddleston,* the evidence of the defendant's contemporaneous drug distribution is offered here for a proper purpose - to establish plan, motive, intent, or knowledge. *See United States v. Ramirez*, 63 F.3d 937, 943 (10th Cir. 1995) (listing cases). The Defendant's distribution of multiple narcotics is relevant to prove knowledge and intent when that evidence "is close in time, highly probative, and similar to the activity with which the defendant is charged." *United States v. Reynoso*, 398 F. Supp. 3d 1115, 1122 (D.N.M. 2019) (quoting *United States v. Becker*, 230 F.3d 1224, 1232 (10th Cir. 2000)). The Defendant's simultaneous prior narcotic involvement (distributing methamphetamine) is probative to show that the Defendant's lack of mistake, motive and plans to distribute a controlled substance. These purposes, specifically plan, motive, intent, lack of mistake, or knowledge, are specifically contemplated by Rule 404(b), and are, therefore, plainly proper. *See* Fed. R. Evid. 404(b)(2) (listing "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident"). The first *Huddleston* factor is thus satisfied.

## 2.      The evidence is relevant under Rule 401.

The second *Huddleston* factor requires that the evidence be relevant under Rule 401.
Evidence is relevant if: (1) "it has any tendency to make a fact more or less probable than it would
be without the evidence;" and (2) "the fact is of consequence in determining the action." Fed. R.
Evid. 401.  In other words, "[r]elevant evidence tends to make a necessary element of an offense
more or less probable." *Davis*, 636 F.3d at 1298.

"The lynchpin of *Huddleston* relevance is similarity." *United States v. Henthorn*, 864 F.3d
1241, 1249 (10th Cir. 2017).  "To determine the relevance of a prior bad act, [the court must] look
to the similarity of the prior act with the charged offense, including their temporal proximity to
each other." *Brooks*, 736 F.3d at 940.  Uncharged acts are admissible "as long as the uncharged
acts are similar to the charged crime and sufficiently close in time." *United States v. Mares*, 441
F.3d 1152, 1157 (10th Cir. 2006) (citing *United States v. Zamora*, 222 F.3d 756, 762 (10th Cir.
2000)). "[T]he degree to which factors such as temporal distance and geographical proximity are
important to a determination of the probative value of similar acts will necessarily depend on the
unique facts of each case's proffered evidence." *Mares*, 441 F.3d at 1159.

Evidence's relevance cannot "depend on a defendant likely acting in conformity with an
alleged character trait" or require the jury to draw a "chain of inferences dependent upon [a]
conclusion" about the defendant's character. *See United States v. Commanche*, 577 F.3d 1261,
1267, 1269 (10th Cir. 2009).  But all this is "not to say that other-act evidence must be excluded
whenever a propensity inference can be drawn; rather, Rule 404(b) excludes the evidence if its
relevance to 'another [proper] purpose' is established only through the forbidden propensity
inference." *United States v. Rodella*, 804 F.3d 1317, 1333 (10th Cir. 2015).

Evidence remains admissible even if it has the potential "impermissible side effect of
allowing the jury to infer criminal propensity," so long as the jury "[i]s not *required* to make any

such inferences in order to also" find willfulness or intent, or any of the other proper purposes
allowed under Rule 404(b).  *See Henthorn*, 864 F.3d 1241, 1251-52 (quoting *Rodella,* 804 F.3d at
1333-34) (emphasis in original). The *Henthorn* court explained this nuance through *United States
v. Moran*, 503 F.3d 1135 (10th Cir. 2007).  *Henthorn* at 1252.  In *Moran*, the district court presiding
over defendant Moran's trial for being a felon in possession of a firearm allowed the government
to present evidence of Moran's prior felon-in-possession conviction.  *Moran,* 503 F.3d at 1138-39.
While the use of Moran's prior conviction to help prove the only challenged element of the charged
offense (*i.e.*, that Moran "knowingly possessed" the firearm) "involve[d] a kind of propensity
inference (*i.e.*, because he knowingly possessed a firearm in the past, he knowingly possessed the
firearm in the present case)," the court explained that the inference "did not require a jury to first
draw the forbidden general inference of bad character or criminal disposition."  *Id.* at 1145.
Instead, the inference was "specific" and "rest[ed] on a logic of improbability that recognizes that
a prior act involving the same knowledge decreases the likelihood that the defendant lacked the
requisite knowledge in committing the charged offense."  *Id.*

Under the second prong, the evidence of the Defendant's distribution of methamphetamine
is highly relevant. The government is required to prove, as elements of the charges in the
Indictment that the Defendant knowingly conspired to distribute fentanyl. The proffered evidence
is relevant to establish both the general and specific intent required.  The Tenth Circuit has "long
recognized the relevance of previous wrongs and crimes in the context of narcotics violations."
*United States v. Conway*, 73 F.3d 975, 981 (10th Cir. 1995) (holding evidence of defendant's three
prior crack cocaine arrests was admissible in subsequent narcotics prosecution as probative of
common plan, knowledge and intent) (internal citations omitted).

Here, the proffered evidence has similarities to the offenses charged in this case including
the temporal proximity to each other, the sufficiently close in time of the evidence to the charged

offenses, and geographical proximity. The Defendant did not distribute just fentanyl; he distributed methamphetamine, as well. He did this at the same time that he distributed fentanyl. The probative value of this evidence is not substantially outweighed by the danger of unfair prejudice. The conduct involves the same activity; distributing a controlled substance. Of course, some danger for prejudice will always arise merely from disclosing a prior uncharged bad acts to a jury, but that danger must substantially outweigh the probative value of the proffered evidence.  In this case, the probative value of the distribution of other substances far outweighs any danger of prejudice. Distributing methamphetamine is neither better or worse than distributing fentanyl. Because the proffered evidence is offered for the proper purposes under Rule 404(b) and is relevant the second *Huddleston* factor is met.

### 3. The probative value of the evidence is not substantially outweighed by its potential for unfair prejudice under Rule 403.

The third *Huddleston* factor requires the evidence's probative value not be substantially outweighed by its potential for unfair prejudice.  Fed. R. Evid. 403 directs that a court may exclude evidence if its "probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  The exclusion of evidence under Rule 403 "is an extraordinary remedy and should be used sparingly."  *Brooks*, 736 F.3d at 940 (quoting *United States v. Tan*, 254 F.3d 1204, 1211 (10th Cir. 2001)).

"Evidence is unfairly prejudicial if it makes a conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant *wholly apart* from its judgment as to his guilt or innocence of the crime charged." *Henthorn*, 864 F.3d at 1256, quoting *United States v. Mackay*, 715 F.3d 807, 840 (10th Cir. 2013) (citation omitted) (emphasis in original).  "In engaging in the requisite balancing," courts "give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial

value." *Id.,* quoting *United States v. Cerno*, 529 F.3d 926, 935 (10th Cir. 2008). And "it is not enough that the risk of unfair prejudice be greater than the probative value of the evidence; the danger of that prejudice must substantially outweigh the evidence's probative value." *Id.* "The trial court has broad discretion to determine whether prejudice inherent in otherwise relevant evidence outweighs its probative value." *Id.*

Presentation of the Defendant's simultaneous distribution of methamphetamine with fentanyl does not call for the jury to convict the defendant on an improper basis. As explained above, these coinciding drug transactions are highly probative to the charged conduct. Therefore, their probative value is not substantially outweighed by the danger of unfair prejudice and the third *Huddleston* factor is satisfied.

### 4.    The district court will instruct the jury pursuant to Rule 105 to consider the evidence only for the purpose for which it was admitted.

The fourth and final *Huddleston* factor requires the district court, upon request, to instruct the jury to consider the evidence only for the purpose for which it was admitted. "If a court admits evidence that is admissible ... for a purpose – but not ... for another purpose – the court, on timely request, must restrict the evidence to its proper scope and instruct the jury accordingly." Fed. R. Evid. 105. For example, "[a] limiting instruction cautions the jury that the Rule 404(b) evidence should be considered only for the purposes for which it was admitted and not as evidence of the defendant's character or propensity to commit an offense." *Davis*, 636 F.3d at 1298. It is the common practice of this court to include such a limiting instruction, and "absent a showing to the contrary, there is a presumption that jurors will conscientiously follow the trial court's instructions." *Brooks*, 736 F.3d at 941. The final *Huddleston* factor can be met.

### IV.    CONCLUSION

Here the Defendant's methamphetamine distribution along with fentanyl distribution is inextricably intertwined with the crimes charged, provides the context for the crimes, and is

necessary to understand the context of the Defendant's crimes. Alternatively, the proffered evidence demonstrates the Defendant's plan, motive, intent, lack of mistake or knowledge relating to his drug trafficking activities. The Defendant's contemporaneous distribution of methamphetamine with fentanyl is admissible under the accepted principles set forth in Rule 404(b). Having notified the Court and the defendant of the proposed prior evidence, explained its proper purpose, its relevance, and the absence of unfair prejudice, the United States requests the Court find the evidence is admissible at trial under Fed. R. Evid. 403 or 404(b).

DATED this 6th day of October, 2023.

NICHOLAS VASSALLO
United States Attorney

By:   */s/ Timothy J. Forwood*
TIMOTHY J. FORWOOD
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of October, 2023, the foregoing was electronically filed and consequently served on defense counsel.

*/s/ Andi M. Shaffer*
For the United States Attorney's Office