Timothy J. Forwood, WSB #6-4120
Assistant United States Attorney
United States Attorney's Office for the District of Wyoming
P.O. Box 668
Cheyenne, WY 82003
(307) 772-2124
Timothy.Forwood@usdoj.gov

Paige Hammer, WSB #7-5882
Assistant United States Attorney
United States Attorney's Office for the District of Wyoming
P.O. Box 668
Cheyenne, WY 82003
(307) 772-2124
Paige.Hammer@usdoj.gov

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF WYOMING**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Docket No. 23-CR-53-S |
| **TRAQUEVIS DEWAYNE HARDY,** | ) ) | **NON-PUBLIC DOCUMENT** |
| Defendant. | ) ) ) | |

**GOVERNMENT'S PRETRIAL MEMORANDUM**

The United States submits the following as the Government's Pretrial Memorandum in this matter:

### I.   INTRODUCTION AND STATUS OF THE CASE

**A.   Trial Status:**

The trial in this matter is scheduled to begin Monday, October 23, 2023, at 9:00 A.M., before the Honorable Scott W. Skavdahl, Chief Judge of the United States District Court for Wyoming. Estimated time of trial is approximately three full court days.

**B.     Charges:**

The *Indictment*, returned May 17, 2023, charges the Defendant, Traquevis Dewayne Hardy, as follows:

From on or about July 1, 2022, through on or about December 29, 2022, in the District of Wyoming, the Defendant, TRAQUEVIS DEWAYNE HARDY, did knowingly, intentionally, and unlawfully combine, conspire, confederate, and agree together and with other persons known and unknown to the grand jury to distribute 40 grams or more of a mixture or substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide, also known as fentanyl, a Schedule II controlled substance.

In violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(B).

The Defendant faces penalties of 5 years to life imprisonment, a fine of $10,000,000.00, not less than 3 years to life of supervised release, and a $100.00 special assessment.

To obtain a conviction on these counts, the United States must prove the following elements beyond a reasonable doubt:

| | |
|---|---|
| ***First:*** | From on or about July 1, 2022, through on or about December 29, 2022; |
| ***Second***: | The Defendant agreed with at least one other person to distribute fentanyl; |
| ***Third***: | The Defendant knew the essential objective of the conspiracy (to distribute fentanyl, a controlled substance); |
| ***Fourth***: | The Defendant knowingly and voluntarily involved himself in the conspiracy; and |

*Fifth*: There was interdependence among the members of the conspiracy; that is, the members, in some way or manner, intended to act together for their shared mutual benefit within the scope of the conspiracy charged.

### C. Statement of Facts

The United States anticipates that the trial evidence and testimony will establish the following facts:

On October 25, 2022, Cheyenne Police Department officers responded to Capitol City Storage upon a report of a man passed out in his vehicle who could not be roused. Officers woke the man up, identified him as Derek Ascherin, and asked him to exit his car. When Ascherin stepped out, officers noticed a metal straw with burn marks indicating it had likely been used to consume illegal narcotics. Upon searching Ascherin, officers discovered fentanyl pills in a small glass jar and two small plastic baggies. A search of Ascherin's car yielded more fentanyl pills, methamphetamine, marijuana, a small digital scale, and multiple cells phones. In total, officers seized 82 suspected fentanyl pills along with approximately 17 grams of methamphetamine. Later analysis by DCI Forensic Analyst Amber Gurley confirmed the pills contained para-Fluorofentanyl (Schedule I), ANPP (Schedule II), and fentanyl (Schedule II) and the suspected methamphetamine was indeed methamphetamine (Schedule II).

As part of their investigation, officers obtained a search warrant for one of Ascherin's cell phones in the hopes of identifying Ascherin's source for the fentanyl and methamphetamine. The search warrant yielded text and Facebook messages between Ascherin and Defendant, dating back to July 2022, wherein Ascherin arranged multiple purchases of fentanyl pills from Defendant. Between July 2022 and October 2022, Ascherin appeared to travel multiple times to Colorado to meet the Defendant with the goal of purchasing fentanyl and methamphetamine.

In the week prior to his arrest, Ascherin sent multiple Facebook messages to the Defendant inquiring about buying fentanyl pills. On October 18, 2022, Ascherin asked about buying a "boat." A "boat" is a phrase commonly used by buyers and sellers of fentanyl to describe 1000 fentanyl pills. In his response, the Defendant indicated he could sell Ascherin a "boat" for $1,600.00. Further messages show the Defendant and Ascherin arranged a meeting in Denver for the deal. Two days later, Ascherin negotiated another purchase of fentanyl from the Defendant. This time he wanted to buy a "half boat," or 500 fentanyl pills, and the Defendant agreed to supply him. The Defendant confirmed the deal would occur at the same location as their deal a couple days before. The last sale of fentanyl from the Defendant to Ascherin was less than a week prior to Ascherin's arrest where Ascherin was found in possession of fentanyl pills.

Based on the exchanges between the Defendant and Ascherin, Detective Sanne continued his investigation into the Defendant by applying for and receiving a search warrant to obtain historical data from the Defendant's Facebook account. The information seized pursuant to the search warrant indicated strong evidence that the account was indeed the Defendant's and that he was using Facebook's messaging platform to negotiate the sale of fentanyl.

Detective Sanne obtained the following information to support the assertion that the Facebook account was owned and used by the Defendant:

- The name on the account was "Tray Hardy" with registered email addresses listed as "trayhardy@ymail.com" and "tray.hardy@facebook.com";
- The Defendant was positively identified to be in the Facebook account's profile picture which was a collage of six photos;
- The date of birth associated with the Facebook account matched the Defendant's verified date of birth;
- The phone number associated with the Facebook account matched the phone number provided by the Defendant upon his arrest;

4

- Five credit cards were associated with the Facebook account and each credit card listed the account holder as "Tray Hardy";

- An outgoing message sent from the "Tray Hardy" account to another Facebook account included a CashApp account name of "$Traquevis4242";

- An outgoing message sent from the "Tray Hardy" account to another Facebook account containing a "selfie"-style image of the Defendant;

- An outgoing message sent from the "Tray Hardy" account to another Facebook account with an image depicting the Defendant's temporary Wyoming ID card which contained a photograph positively identified as the Defendant;

- An outgoing message sent from the "Tray Hardy" account to another Facebook account containing an image depicting a dark-skinned forearm with a tattoo of a Chinese character holding a bag of United States currency. The Defendant is known to have a Chinese character tattooed on his forearm;

- An outgoing message sent from the "Tray Hardy" account to "Brenda Cooksey Hardy" referred to the recipient of the message as "mom" and Brenda Hardy has been previously identified as the Defendant's mother;

- A message from the "Brenda Cooksey Hardy" account back to the "Tray Hardy" account said "I'm done with you Tray";

- A message from the "Brenda Cooksey Hardy" account to the "Tray Hardy" account said "The last time I saw u" and included an image depicting both the Defendant and his mother, Brenda Hardy;

- A message from the "Brenda Cooksey Hardy" account to the "Tray Hardy" account included an image of the Defendant and two other black males and two messages saying "I remember taking that picture" and "My boys";

- An outgoing message sent from the "Tray Hardy" account to another Facebook user included a screenshot image of a Delta Airlines flight receipt for a passenger named "Traquevis Hardy";

- An outgoing message sent from the "Tray Hardy" account to another Facebook user included a screenshot image of a Delta Airlines flight itinerary for a passenger named "Traquevis Hardy";

- Multiple outgoing messages from the "Tray Hardy" account to other Facebook accounts where the Defendant invites other people to contact him using a cell phone number matching the number provided by the Defendant upon his arrest;

- Multiple incoming messages from other Facebook accounts to the "Tray

5

> Hardy" account where other people contact him to buy fentanyl and refer to him as "Tray" and the outgoing messages from the "Tray Hardy" account responds;
> 
> - The hometown listed on the account was Atlanta, Georgia which aligns with information provided by the Defendant upon his arrest that he was born in Atlanta, Georgia;
> 
> - The high school noted in the Education section of the Facebook profile is located in a suburb outside of Atlanta and matches the town where the Defendant's mother currently lives;

In reviewing the messages sent from the Defendant's Facebook account to other Facebook users, Detective Sanne found at least twenty people who sought to buy fentanyl from the Defendant. In response to those messages, the Defendant included information regarding the quantity he would sell, proposed price, and other logistical information to facilitate the deal. The Defendant consistently sent messages of this kind from July 2022 through December 2022.

Based on the evidence gained from his investigation, Detective Sanne applied for and received an arrest warrant for the Defendant for one count of Conspiracy to Distribute Fentanyl. Upon his arrest, the Defendant was found in possession of nine fentanyl pills. Some of the fentanyl pills were found on the passenger seat where the Defendant was seated when law enforcement officers contacted him. Later analysis by DCI Forensic Analyst Bailey Johnson confirmed the pills contained ANPP (Schedule II) and/or fentanyl (Schedule II).

The Defendant agreed to be interviewed by Detective Sanne and another officer after being advised of, and waiving, his rights pursuant to *Miranda v. Arizona*. Detective Sanne showed the Defendant the information seized from the Defendant's Facebook account. The Defendant admitted it was his account and that he used that account to communicate to people throughout 2022. The Defendant admitted to knowing and communicating with some of the people from the seized Facebook messages and to selling methamphetamine, however he denied ever selling fentanyl pills.

Detective Sanne interviewed some of the people who sent messages to the Defendant on Facebook for the purposes of buying fentanyl. During one interview, the buyer showed Detective Sanne the messages she sent the Defendant via Facebook, negotiating the purchase of fentanyl pills. Within the Facebook conversation, Detective Sanne observed the profile picture for the person with whom the buyer was negotiating the purchase and recognized the person in the picture as the Defendant. As well, the buyer positively identified the Defendant based on a previous booking photo as the person she was talking to on Facebook for the purpose of buying fentanyl. Detective Sanne's interviews with other buyers revealed similar information: the Defendant used Facebook to negotiate the distribution of fentanyl pills, his profile picture matched his physical description, and the buyer identified the Defendant based on a booking photo.

**D.    Witnesses**

1. Cheyenne Police Department Officer Mark Ehlman
2. Cheyenne Police Department Officer Jeremiah Keslar
3. Cheyenne Police Department Officer Nathan Lucero
4. Cheyenne Police Department Officer Talmadge Peden
5. Cheyenne Police Department Detective Craig Sanne
6. Cheyenne Police Department Detective Aaron Willmarth
    a. Cellebrite download
7. DCI Forensic Analyst Amber Gurley
    a. Forensic Drug Chemistry Expert
8. DCI Forensic Analyst Bailey Johnson
    a. Forensic Drug Chemistry Expert
9. DCI Special Agent Brad Reinhart

      a. Illegal Controlled Substance Distribution Investigations Expert

10. Shilo Gifford

11. Shaya Jones

12. Montegua Presbury

## II. DISCOVERY

The United States believes that it has fully complied with its discovery obligations under the Constitution, pertinent statutory provisions, rules of criminal procedure, and the discovery order in this matter, and will continue to do so. The Defendant has been provided with all written reports, recordings, photographs, and other tangible materials generated by the investigation of this case that do not constitute work product. The Government will provide the Defense with a list of its proposed exhibits, along with a copy of each, on the morning of trial.

## III. PRETRIAL MOTIONS

The Defendant filed a motion for a pretrial *James* hearing for October 17, 2023. The court has scheduled a *James* hearing for October 20, 2023 at 1:00PM.

## IV. STIPULATIONS

The United States and defense counsel have been unable to reach any pretrial stipulations.

## V. WITNESSES EXCLUSION AND CASE AGENT DESIGNATION

The United States will move for the exclusion of witnesses under Fed. R. Evid. 615. However, the government would request that Det. Craig Sanne be exempt from the exclusion order, under Fed .R. Evid. 615. *See also United States v. Avalos*, 506 F.3d 972, 978 (10th Cir. 2007), overruled on other grounds; *Chambers v. United States,* 129 U.S. 687 (2009). The United States believes Det. Sanne should be excepted from any sequestration order as his knowledge of the case qualifies him as essential to counsel in understanding the case properly. *See*, e.g., *United States v.*

*Seschillie*, 310 F.3d 1208 (9th Cir. 2002).

## VI.   ANTICIPATED TRIAL ISSUES

### A. Admission of Facebook messages between the Defendant and buyers of fentanyl

As the above Statement of Facts section indicates, some of the evidence the United States intends to present to the jury in its case against the Defendant includes many Facebook message conversations found in the Defendant's Facebook account. In order for the contents of the Facebook messages to be admitted, the United States will need to complete three, separate tasks: 1) authenticate that the messages are Facebook messages sent between the "Tray Hardy" Facebook account to other Facebook users were authored by the Defendant as required by Federal Rule of Evidence 901(a); 2) prove by the preponderance of the evidence that the messages were sent by the Defendant and thus are non-hearsay, statements of a party opponent pursuant to Federal Rule of Evidence 801(d)(2)(A); and 3) prove by the preponderance of the evidence that the messages sent by the fentanyl customers to the Defendant are not hearsay as statements of a coconspirator pursuant to Federal Rule of Evidence 801(d)(2)(E). The United States will present sufficient evidence to complete each task.

1. **Authentication pursuant to Federal Rule of Evidence 902(11), 902(13), 902(14) and 803(6)**

On September 6, 2023, the United States filed a NOTICE OF INTENT TO PROCEED UNDER FEDERAL RULES OF EVIDENCE 902(11), 902(13), 902(14) AND 803(6). (ECF 42). Records provided by Meta with the certificate of authenticity show that the records are accurate and were made at or near the time the information was transmitted. Therefore, the records are self-authenticating, and no witness testimony is required.

2. **Authentication pursuant to Federal Rule of Evidence 901**

9

To authenticate the Facebook messages as ones sent by the Defendant, the United States "must produce evidence sufficient to support a finding that the item is what the [United States] claims it is." Fed. R. Evid. 901(a). "Although Rule 901 serves an important gatekeeping function, the bar for authentication of evidence is not particularly high." *Unites States v. Isabella*, 918 F.3d 816, 843 (10th Cir. 2019) (quoting *United States v. Gagliardi*, 506 F.3d 140, 151 (2d Cir. 2007)) (internal quotations omitted). "The party authenticating the exhibit need only prove a rational basis for that party's claim that the document is what it is asserted to be. Authentication may be established by circumstantial evidence. Once the threshold requirement is met … any question as to whether the evidence is authentic is for the jury." *United States v. Lamm*, 5 F.4th 942, 946-47 (8th Cir. 2021) (internal and external citations omitted).

Here, significant evidence exists to support the assertion that the messages sent from the "Tray Hardy" account were indeed sent by the Defendant. As noted above in Section (I)(C), the Defendant admitted ownership of the Facebook account in an interview with Detective Sanne. This admission by the Defendant is direct evidence of his ownership and control of the Facebook account and sufficient to support authentication for the purposes of Federal Rule of Evidence 901(a).

Assuming *arguendo* that the Defendant's admission is insufficient, there is still significant evidence to show that the account was under his dominion and control and thus the messages sent from his account were sent by the Defendant. Turning back to Section (I)(C), Detective Sanne determined that the name, phone number, date of birth, email address, hometown, mother's name, and profile pictures all matched confirmed information about the Defendant. As well, the contents of the messages through context indicate that the Defendant sent them based on him responding when called "Tray," that multiple pictures of the Defendant were sent from the account, that

confirmation for airline tickets bought in the Defendant's name were sent from the account, and that an account using the same name as the Defendant's mother sent the "Tray Hardy" account photos of the Defendant and referred to the Defendant as "my boy."

Between the Defendant's admission of ownership of the Facebook account and the extensive evidence indicating that the Defendant used the account to send messages to facilitate the selling of fentanyl, there is sufficient evidence for the United States to present to support authentication of the Facebook messages pursuant to Federal Rule of Evidence 901(a). *See United States v. Lewisbey*, 843 F.3d 653, 658 (7th Cir. 2016) (finding the defendant's admission of making Facebook posts was sufficient for authentication and that the Facebook page listing his nickname, date of birth, and place of residence added to weight of authentication).

### 3. Statement of party opponent pursuant to Federal Rule of Evidence 801(d)(2)(A)

The United States intends to introduce the Defendant's Facebook messages as statements of a party opponent pursuant to Federal Rule of Evidence 801(d)(2)(A). To do so, the United States will "need only show by a preponderance of the evidence that the opposing party had made the statement." *United States v. Brinson*, 772 F.3d 1314, 1320 (10th Cir. 2014) (external citation omitted). Here, as with proving that the messages sent by the Defendant for purpose of authentication, there is sufficient information to find by the preponderance that the Defendant made the statements. The Defendant admitted ownership of the Facebook account, the information associated with the account (name, date of birth, hometown, etc.) match confirmed information of the Defendant, multiple witnesses indicated they communicated with the "Tray Hardy" Facebook account to facilitate buying fentanyl and then would meet with the Defendant for the purchase, and multiple pictures of the Defendant are associated with the account. This evidence strongly supports the assertion that the Defendant had dominion and control over the Facebook account and

thus authored the messages the United States intends to introduce. "After the admission of any social media evidence, [the] Defendant is free to challenge the reliability of the evidence, to minimize its importance, or to argue alternative interpretations of its meaning, but these and similar other challenges go to the *weight* of the evidence – not to its *admissibility*." *Unites States v. Barela*, 2021 WL 5447915 at 3 (D.N.M. 2021) (alteration in original) (external citations omitted).

### 4. Statement of coconspirator pursuant to Federal Rule of Evidence 801(d)(2)(E)

The United States intends to introduce the messages sent by the aforementioned buyers of fentanyl to the Defendant as statements of coconspirators pursuant to Federal Rule of Evidence 801(d)(2)(E). To be admissible as non-hearsay statements, the court must make three findings on the record about the messages: 1) by the preponderance of the evidence, a conspiracy existed; 2) the declarant and the defendant were both members of the conspiracy; and 3) the statements were made in the course of and in furtherance of the conspiracy. *United States v. Stein*, 985 F.3d 1254, 1269 (10th Cir. 2021) (external citations omitted). "A district court's preliminary conclusion that the predicate conspiracy existed at most must be supported by some 'independent evidence' of the conspiracy other than the proffered statements themselves, although such evidence need not be substantial." *Stein* at 1269 (external citations omitted). For example, "[t]estimony of a government agent regarding his interactions or conversations with coconspirators is adequate independent evidence." *Id*. The coconspirators statements may be considered alongside the independent evidence to evaluate if a conspiracy exists. *Id.* at 1269.

Here, the United States intends to introduce the messages sent by the Defendant's many fentanyl customers to the Defendant in order to further the fentanyl distribution conspiracy. The evidence will include statements by the fentanyl customers regarding quantity of fentanyl pills, the negotiation on purchase price, other logistical information with the Defendant in order to cement

12

the deal, and the identity of the person from whom the buyer was purchasing fentanyl.

As stated previously, the Defendant filed a motion for a *James* Hearing on October 17, 2023, which the court has scheduled a hearing to address on October 20, 2023.

### B. Inadmissibility of Self-Serving Hearsay

The Defendant's statement to law enforcement was recorded, however the United States does not intend to play the recording for the jury. The exculpatory statements made by the Defendant during that recorded interview--that he did not sell or distribute fentanyl--are hearsay and should not be admitted. Furthermore, any attempt by the Defendant to introduce the recorded interview should be denied. An out-of-court statement, even by a defendant, is hearsay and not admissible for the truth of the matter asserted in the statement unless a federal statute, a rule of evidence or another applicable rule makes the statement admissible. See Fed. R. Evid. 802 (hearsay prohibition); *id.* at 801(c) (definition of hearsay).

In this case, the United States will object to the introduction any out-of-court statements made by the Defendant when offered by him as evidence. Such "self-serving hearsay" is inadmissible under controlling rules of evidence because it is not offered against an opposing party. See Fed. R. Evid. 802(d)(2) (all out-of-court statements described in subsections must be "offered <u>against</u> an opposing party"); see also *United States v. Fernandez*, 839 F.2d 639, 640 (9th Cir. 1988) (per curiam) (defendant not allowed to elicit his own out-of-court exculpatory statement because statement was not to be used against defendant) ("Fernandez was not prevented from introducing his denial—he could have testified to the statement himself. He chose not to testify. It seems obvious defense counsel wished to place Fernandez's statement to Bateman before the jury without subjecting Fernandez to cross-examination, precisely what the hearsay rule forbids."); *United States v. Bond*, 87 F.3d 695, 699-700 (5th Cir. 1996) (transcript of defendant's out-of-court

13

statement inadmissible because it was offered by defendant "to benefit himself").

### C. Proper Cross-Examination of Witnesses with Prior Convictions

Rule 609 governs the appropriate boundaries for impeachment of witnesses by use of prior convictions. Generally, relevant prior convictions whose fact of conviction may be used to impeach a witness are those that are felonies that fall within a ten-year period and those that involve an element indicating a dishonest act or the making of a false statement. Even where the fact of a prior conviction is the subject of proper cross-examination, any facts underlying a particular conviction are not relevant or the proper subject of cross-examination. *United States v. Lopez-Medina*, 596 F.3d 716, 737-38 (10th Cir. 2010). The government expects to discuss many of these issues with counsel in advance of trial and seek court intervention on the propriety of cross examination on a particular conviction only where the parties do not agree.

### VII. CONCLUSION

The foregoing is a summary of points the United States anticipates may arise at trial. Should any legal issues arise that have not been covered in this trial brief, the United States respectfully requests leave to submit such further memoranda as may be necessary.

DATED this 18th day of October 2023.

    Respectfully submitted,

    ERIC J. HEIMANN
    Attorney for the United States
    Acting under Authority Conferred by 28 U.S.C. § 515

    By:   /s/ Timothy J. Forwood
          TIMOTHY J. FORWOOD
          Assistant United States Attorney

    By:   /s/ Paige Hammer
          PAIGE HAMMER
          Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of October 2023, the foregoing was electronically filed and consequently served upon counsel of record.

*/s/ Andria Shaffer*
For the United States Attorney's Office