Timothy J. Forwood, WSB #6-4120
Assistant United States Attorney
United States Attorney's Office
District of Wyoming
P.O. Box 668
Cheyenne, WY 82003
(307) 772-2124
Timothy.Forwood@usdoj.gov

Paige Hammer, WSB #7-5882
Assistant United States Attorney
United States Attorney's Office
District of Wyoming
P.O. Box 668
Cheyenne, WY 82003
(307) 772-2124
Paige.Hammer@usdoj.gov

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Criminal No. 23-CR-53-S |
| TRAQUEVIS DEWAYNE HARDY | |
| Defendant. | |

### GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR *JAMES* HEARING AND COURT'S REQUEST FOR ADDITIONAL INFORMATION REGARDING COCONSPIRATOR STATEMENTS

The United States, by and through its attorney, Timothy J. Forwood, Assistant United States Attorney for the District of Wyoming, responds below to the court's request for a proffer of evidence and argument as to the admissibility of coconspirator statements to be offered by the government at trial.

## I. October 20, 2023 *James* Hearing

On October 20, 2023, this Court held a *James* hearing in the above-captioned matter. The United States called Cheyenne Police Department Detective Craig Sanne to provide testimony regarding anticipated testimony from coconspirators Shaya Jones, Shilo Gifford, and Montegua Presbury. Det. Sanne testified that all three individuals purchased fentanyl from the Defendant on numerous occasions during the time period of the charged conspiracy. The evidence and testimony demonstrates their intent when buying fentanyl from the Defendant was to further redistribute the fentanyl to other individuals in furtherance of the conspiracy. Facebook messages recovered from the Defendant's Facebook account corroborate the witness testimony.[1][2][3]

Det. Sanne also provided testimony regarding the seizure of co-conspirator Derek Ascherin's cell phone at the time of his arrest on October 25, 2022. A search of the phone revealed that Ascherin had been communicating regularly with the Defendant to purchase large amounts of fentanyl.[4] The messages between Ascherin and the Defendant match and correspond to messages obtained from Meta in the Facebook data of the Defendant's conversations with Ascherin. The messages showed an ongoing relationship between Ascherin and the Defendant from July 6, 2022, through September 26, 2022.[5] The messages show that after receiving fentanyl from the Defendant, Ascherin messaged two individuals, Garcia Isabel[6] and Angelique W[7], about further distributing the fentanyl to them. The sale of fentanyl from Ascherin to Isabel and Angelique

---

[1] Attachment 1 (Exhibit 19)- Facebook download of communications between Shilo Gifford and the Defendant (in full)
[2] Attachment 2 (Exhibit 20)- Facebook download of communications between Shaya Jones and the Defendant (in full)
[3] Attachment 3 (Exhibit 21)-Facebook download of communications between Montegua Presbury and the Defendant
[4] Attachment 4 (Exhibit 67)- Cellebrite download of communication between Derek Ascherin and the Defendant
[5] Attachment 5 (Exhibit 22a)- Facebook download of communications between Derek Ascherin and the Defendant
[6] Attachment 6 (Exhibit 65)- Cellebrite download of communication between Derek Ascherin and Garcia Isabel
[7] Attachment 7 (Exhibit 66)- Cellebrite download of communication between Derek Ascherin and Angelique W

occurred at the same time that Ascherin was purchasing large amounts of fentanyl from the Defendant.

At the end of the hearing, the United States stated its intent to introduce approximately seventeen Facebook message chains between the Defendant and other people to whom he sold fentanyl during the conspiracy to further support the United States' assertion that the Defendant conspired to sell fentanyl. The Court expressed its concern for whether those statements constituted coconspirator statements or statements of a buyer-seller nature and thus not admissible under FRE 801(d)(2)(E). In turn, the Court asked the United States to proffer which statements it alleges are coconspirator statements pursuant to FRE 801(d)(2)(E) and provide authority for their admission as coconspirator statements. The United States files this response and seeks admission of the following statements made in furtherance of the conspiracy by the following:

- Derek Ascherin
- Shilo Gifford (also known as Shilo D. Garton)
- Shaya Jones
- Montegua Presbury
- "Scotty Be"

## II. Federal Rule of Evidence 801(d)(2)(E)

The Federal Rules of Evidence ("FRE") allow for the introduction of a coconspirator's statements as non-hearsay statements if the "statement is offered against an opposing party and …. was made by the party's coconspirator during and in furtherance of the conspiracy...." *See* Fed. R. Evid. 801(d)(2)(E). Thus, before admitting evidence under FRE 801(d)(2)(E), the district court must determine by a preponderance of evidence that (1) a conspiracy existed, (2) that the declarant and the defendant were both members of the conspiracy, and (3) that the statements were made in the course of and in furtherance of the conspiracy. *United States v. Owens*, 70 F.3d 1118, 1123 (10th Cir. 1995) (citations omitted). Tenth Circuit caselaw does not require the declarant be the

3

defendant, "only that she be a member of the conspiracy." *United States v. Baines*, 486 F. Supp.2d 1288, 1295 (D.N.M. 2007) (internal quotations omitted) (external citations omitted).

There is sufficient information to find that a conspiracy existed. The Defendant purchased and sold fentanyl to others who sold and resold fentanyl, including Ascherin, Gifford, Jones, and Presbury. As stated in *United States v. Cornelius*, "[t]he evidence that Cornelius repeatedly sold cocaine to other drug distributors who in turn sold it to others is sufficient to support a reasonable inference that conspiratorial interdependence existed between Cornelius and other distributors in a conspiracy." 696 F.3d 1307, 1317–18 (10th Cir. 2012)[8]. Additionally, the United States does not need to prove the conspiracy could not have functioned without the Defendant, rather that the Defendant "was an operational link within it." *Id.*

In this matter, the Defendant had sources of supply in Denver. He utilized those sources to provide fentanyl to numerous individuals in Cheyenne, Wyoming. These ongoing relationships with multiple individuals "facilitated the venture as a whole." *United States v. Acosta-Gallardo*, 656 F.3d 1109, 1124 (10th Cir. 2011). The end users relied upon the retail dealers (Ascherin, Jones, Gifford, and Presbury) who relied upon the Defendant who in turn relies upon one of his sources, "Scotty Be."

### III. FRE 801(d)(2)(E) and Interdependence

Of central importance here, and to address the Court's expressed concern, is the "in furtherance" requirement of the 801(d)(2)(E), which "embodies the drafters' desire to strike a balance between the great need for conspirators' statements in combating undesirable criminal

---

[8] *See United States v. Rodriguez*, 635 F. App'x 500, 501 (10th Cir. 2015); *United States v. Garrison*, 761 F. App'x 808, 813 (10th Cir. 2019) ("[T]he government presented evidence of more than a simple buyer-seller relationship between Garrison and his suppliers. For example, trial testimony and other evidence showed that Garrison made repeated weekly and sometimes daily drug purchases from at least three different suppliers for the purpose of resale rather than his own personal use. The government also presented evidence that Garrison and his suppliers worked together in fulfilling the requests of Garrison's customers and that one of Garrison's suppliers, Ramirez, contacted Garrison when he had extra drugs available and sold him drugs on credit on one occasion.")

activity which is inherently secretive and difficult of proof, and the need to protect the accused against idle chatter of criminal partners as well as inadvertently misreported and deliberately fabricated evidence." *United States v. Perez*, 989 F.2d 1574, 1578 (10th Cir. 1993) (internal quotation marks omitted). A wide array of statements can fit this requirement, including those made "to induce enlistment or further participation in the group's activities; ... to prompt further action on the part of conspirators; ... to reassure members of a conspiracy's continued existence; ... to allay a co-conspirator's fears; and ... to keep co-conspirators abreast of an ongoing conspiracy's activities." *Id.* (internal quotation marks omitted).  Additionally, and perhaps most pertinent here, statements of a co-conspirator identifying a fellow conspirator are "in furtherance" of the conspiracy.  *See United States v. Townley*, 472 F.3d 1267, 1273 (10th Cir. 2007).

Determining if the statement was made "in furtherance" of the conspiracy is not an exact science. "When inquiring whether a statement was made in furtherance of a conspiracy, the court does not focus on its actual effect in advancing the goals of the conspiracy, but on the declarant's intent in making the statement." *Baines* at 1295. As stated in *Perez*:

> [N]o talismanic formula exists for ascertaining whether a particular statement was intended by the declarant to further the conspiracy…[t]o the contrary, this determination must be made by examining the context in which the challenged statement was made.

989 F.2d at 1578-79. However, in order to discuss "in furtherance" we must also discuss interdependence.

The Tenth Circuit in *United States v. Fletcher* succinctly discussed the role of interdependence in a conspiracy:

> Interdependence requires proof that the conspirators intended to act together for their shared mutual benefit within the scope of the conspiracy charged. The requirement is satisfied if the alleged coconspirators were united in a common unlawful goal or purpose and if a defendant's activities facilitated the endeavors of another alleged coconspirator or facilitated the venture as a whole. **The**

> **interdependence element does not, however, require proof the coconspirators know the identities or details of each scheme or have connections with all other members of the conspiracy. The buyer-seller relationship is patently an interdependent one.**

*Fletcher*, 497 F. App'x. 795, 802-03 (10th Cir. 2012) (citations omitted) (emphasis added). However, a buyer-seller relationship "*without more* is insufficient to tie *the buyer* to a *larger* conspiracy." *United States v. Wright*, 506 F.3d 1293, 1299 (10th Cir. 2007) (alteration in original). "The purpose of the buyer-seller rule is to separate consumers, who do not plan to redistribute drugs for profit, from street-level, mid-level, and other distributors, who do intend to redistribute drugs for profit, thereby furthering the objective of the conspiracy." *Id.*

### IV. Derek Ascherin Messages

To admit the messages between Ascherin and the Defendant, and Ascherin to Isabel and Angelique as coconspirator statements, the United States needs to show by a preponderance of the evidence the three foundational requirements for admitting statements under 801(d)(2)(E), *i.e.*, (1) that a conspiracy existed, (2) that the declarant and the defendant were both members of the conspiracy, and (3) that the statements were made in the course of and in furtherance of the conspiracy.

The communications from Ascherin to the Defendant and subsequent distribution of fentanyl from the Defendant to Ascherin show interdependence as it shows each person's role within the conspiracy: The Defendant as the wholesale dealer, Ascherin as the retail dealer, and Isabel and Angelique as the likely end users. The Defendant was the wholesale dealer that supplied Ascherin and others repeatedly, which demonstrates interdependence. *Id.* Consequently, their conversations advance the conspiracy by prompting further action on the part of conspirators. *United States v. Perez* at 1578.

Further, Ascherin's contemporaneous messages with Isabel and Angelique show that Ascherin was not an end user (who interdependence protects). Their messages, showing Ascherin's subsequent distribution are relevant to the outlined conspiracy. Ascherin, as the retail dealer, is a coconspirator and his statements are not hearsay. Isabel and Angelique's messages should be admitted to prove the context of the messages.

### V. Montegua Presbury Messages

As noted during Det. Sanne's testimony during the *James* hearing, Ms. Gifford, Ms. Jones and Ms. Presbury communicated with the Defendant via Facebook messages to facilitate buying fentanyl pills, some of which were later re-sold to other fentanyl buyers downstream. As provided through testimony from Det. Sanne, Montegua Presbury stated she did not use fentanyl. It is anticipated that Ms. Presbury will state that all of the fentanyl she obtained from the Defendant was for redistribution. Because every transaction and message that she communicated with the Defendant was for fentanyl to be redistributed, there is interdependence and furtherance of the conspiracy. Each person was an important link in the chain, i.e., each was interdependent on the other. Ms. Presbury provided the link to the Defendant and his sources of supply and to the ultimate end user. The messages, combined with the testimony that they bought the fentanyl pills and later re-sold the pills, demonstrated they were not solely end users of the pills and their conversations advanced the objectives of the conspiracy by prompting further action on the part of conspirators. *United States v. Perez* at 1578.

### VI. Shilo Gifford Messages

As proffered by Detective Sanne, Shilo Gifford started that she purchased thousands of pills of fentanyl for her own personal use and redistribution. The Defendant was one source of those fentanyl pills. Shilo Gifford was not just an end user; she was also a fentanyl dealer as well.

7

Because of this, and her repeated transactions with the Defendant, she is part of the larger conspiracy. Therefore, her messages should be admissible as coconspirator statements.

It is anticipated that Gifford will testify that she purchased fentanyl just for her own personal use. This is seen in the unredacted message chain between Gifford and the Defendant:

- Gifford- Can you please help get some ills plea

- Tray Hardy- How many. I thought that's what yall went to foco for

- …

- Tray Hardy- How many pill did u want to get

- Shilo D. Garton- [Shilo unsent a message]

- Shilo D Garton- 2

(Exhibit 19, at 6-2).

In this exchange, Gifford is merely purchasing a user amount. However, Gifford will state that she purchased many pills on numerous occasions for redistribution. The following is one example:

- Shilo D Garton- Got 200

- Tray Hardy- Ok i got you

- ….

- Shilo D Garton- An I have 320

- …

- Shilo D Garton- So I have 220 so that's 65 of them

- Shilo D Garton- Dude lied on how much he had

- Shilo D Garton- Where u at

- …

8

- Tray Hardy- Come to room 232

(Exhibit 19, at 86-95)

Gifford was clearly part of the conspiracy. "[T]he purpose of the buyer-seller rule is to separate consumers, who do not plan to redistribute drugs for profit, from street-level, mid-level, and other distributors, who do intend to redistribute drugs for profit, thereby furthering the objective of the conspiracy." *United States v. Ivy*, 83 F.3d 1266, 1285–86 (10th Cir. 1996). A coconspirator's personal use of drugs furthers the conspiracy by maintaining the relationship with the retail dealer and keeping their own habit supplied. *See United States v. Roberts*, 14 F.3d 502, 514–16 (10th Cir. 1993).

She depended on the Defendant to supply her fentanyl, and her customers depended on her to sell some of those fentanyl pills to them. This was an ongoing, interdependent relationship. This relationship includes her personal use of fentanyl. Her use of controlled substances is part and parcel of the overall conspiracy to distribute fentanyl.

If the court determines that Gifford's messages are not coconspirator statements, the Defendant's statements with Gifford on Facebook are still admissible as a statement of a party opponent, under FRE 801(d)(2)(A). (See Section VIII).

### VII. "Scotty Be" Messages

One of the Defendant's sources was "Scotty Be."[9] During the Defendant's interactions with "Scotty Be", "Scotty Be" made several statements showing that he was supplying the Defendant with fentanyl. Starting on page 2 of attachment 5, with messages dated August 7, 2022 at 9:02 PM MST, "Scotty Be" and the Defendant begin a conversation that ultimately led "Scotty Be" to offer to sell fentanyl pills to the Defendant. The Defendant agreed and asked how much it would cost

---

[9] Attachment 8 (Exhibit 40b)- Facebook messages between "Scotty Be" and the Defendant.

for him to buy "a hundo pak" or one hundred fentanyl pills. Throughout the conversation, to the top of page 7, it is clear that "Scotty Be" is distributing fentanyl down to the Defendant and, thus, is a coconspirator.

Beginning on page 7, with messages starting on August 9, 2022 at 6:35 AM MST, "Scotty Be" asks the Defendant if he needs "berries," a code name for fentanyl pills. The Defendant asked how much the pills would cost and negotiated for "Scotty Be" to come to him so that the Defendant could buy them. Throughout August 10th, the Defendant and "Scotty Be" continued to work on how they would meet up for the buy or distribution.

Again, on August 11, 2022 at 12:11 PM, on page 17, "Scotty Be" initiated a conversation with the Defendant in which he offered to sell the Defendant more fentanyl pills. The two agreed the Defendant would purchase forty fentanyl pills for $100.00. Two days later, on August 13, 2022 at 5:53 PM, on page 20, the Defendant reached out to "Scotty Be" and asked to purchase fentanyl pills from him. "Scotty Be" noted an unnamed woman, presumably his source, wanted $4 per pill. More messages confirms "Scotty Be" had the fentanyl pills and the Defendant indicated he would have others pick up the pills for him. Similar conversations occur throughout August 15th, August 16th, August 17th, August 20th, and August 21st.

The messages between the Defendant and "Scotty Be" explicitly show that they were made in furtherance of the conspiracy to sell fentanyl. The Defendant bought fentanyl pills from "Scotty Be" which facilitated him selling to Ms. Gifford, Ms. Jones, Ms. Presbury, and Derek Ascherin, which proves interdependence between the Defendant and "Scotty Be."

The statements from "Scotty Be" to the Defendant uncover the depth of the conspiracy. The Defendant provided fentanyl to individuals in Cheyenne; he was not the end user. Those individuals sold the fentanyl distributed to them from the Defendant. As established previously,

that is interdependence. The Defendant needed to obtain his fentanyl from a larger distributor, and one of these sources was "Scotty Be." This demonstrates interdependence. The users needed the retail distributors (Gifford, Jones Presbury and Ascherin), who needed the Defendant, who needed his suppliers, one of which was "Scotty Be." This is a chain conspiracy. The transactions occurred over and over; thus showing their reliance and interdependence.

### VIII. Shilo Gifford, Shaya Jones, and Other Facebook Messages

In the alternate to section VI, if the court does not determined that Shilo Gifford's statements are admissible, coconspirator statements, the United States provides the following alternative argument.

As proffered to the court, the Defendant distributed fentanyl to numerous other individuals in the Cheyenne, Wyoming area on a consistent and repeated basis. This included distribution to two of the witnesses, Shaya Jones and Shilo Gifford. Shaya Jones and Shilo Gifford purchased fentanyl from the Defendant for both personal use and for redistribution. The United States will not offer the women's own statements from the Facebook records for the truth of the matter asserted. Rather the United States will have Ms. Jones and Ms. Gifford testify to their interactions with the Defendant and their role in the conspiracy; that they purchased fentanyl for redistribution.

The United States may still use portions of the Facebook conversations as exhibits, but will not admit Ms. Jones's and Ms. Gifford's own statements as a co-conspirator statement. Instead, the United States will admit the Defendant's own statements into evidence as a statement of a party opponent under FRE 801(d)(2)(A). Ms. Jones's and Ms. Gifford's own statements within the messages will not be offered for the truth of the matter asserted. If their statements are referenced, it will only be used for context. FRE 801(c)(2). Importantly, many of Ms. Jones's and Ms. Gifford's own statements are non-assertive statements, which are not hearsay. *See United States*

11

*v. Lewis*, 902 F.2d 1176, 1179 (5th Cir. 1990) (questions and inquiries are not hearsay because they do not assert anything); *United States v. Twitty*, 689 F. App'x 890, 894–95 (10th Cir. 2017) (citing Smalls, 605 F.3d at 785 n.18) (explaining orders are not hearsay because they are not offered for their truth). Additionally, the statements could also qualify as admissible hearsay under FRE 807.

The Defendant's Facebook messages to Ms. Jones and Ms. Gifford are statements of a party opponent. The United States will rely upon Ms. Jones and Ms. Gifford testimony to provide further detail and context into the Defendant's own statements.

And just as the Defendant sold fentanyl to Jones and Gifford for redistribution, he sold fentanyl to numerous other individual. When distributing fentanyl to these other individuals, he communicated with them through Facebook messenger. The United States intends to introduce these communications not as coconspirator statements, but rather as statements of a party opponent under FRE 801(d)(2)(A). The Defendant distributed fentanyl to several individuals on a consistent basis, sometimes in large amounts. These messages are relevant because it shows that the Defendant distributed fentanyl. Additionally, the messages show his dependence to continue obtaining and selling fentanyl. It circumstantially shows the interdependence with his source. Any statements made by individuals other than the Defendant will only be used for context and not the truth of the matter asserted. Therefore, the third party statements are not hearsay. FRE 801(c)(2).

The United States has prepared exhibits of their conversations in full. As provided, Jones's and Gifford's statements should be visible in order to provide context. If the court determines it is not admissible, the United States has also prepared a redacted version of the messages that only reflect the Defendant's statements.[10]

---

[10] Attachment 9 (Exhibit 19a)- Redacted Facebook download of communications between Shilo Gifford and the Defendant

## IX. Conclusion

The United States, through testimony provided during the *James* hearing and the attached exhibits, has provided evidence of the proposed statements which the government anticipates eliciting during its case in chief, allowing the court a preview of potential evidence. It remains to be seen if the aforementioned statements are in fact "statements" as defined by Fed. R. Evid. 801 and if they are statements, if they will be offered for the truth of the matter asserted. For example, many of the statements contained in the exhibits will be offered merely to show the effect on the listener or are not statements at all.[11]  This is hardly unusual in conspiracy cases, but the point is often, even generally, overlooked. Statements by co-conspirators are commonly introduced at trial simply because the statements themselves are part of the plotting to commit a crime. The co-conspirator is not asserting the truth of a historical event. Rather, he is directing the conduct of a fellow conspirator or agreeing to follow directions. Even statements about historical events — such as an assertion that the targeted victim had shot a member of the gang plotting revenge — typically are not offered for their truth; whether the target actually committed the alleged offense is irrelevant to the guilt of the plotters. *See United States v. Faulkner*, 439 F.3d 1221, 1226 (10th Cir. 2006).

---

[10] Attachment 10 (Exhibit 20a)- Facebook download of communications between Shaya Jones and the Defendant

[11] As explained in the Advisory Committee Notes to Fed. R. Evid. 801, "If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay .... The effect is to exclude from hearsay the entire category of 'verbal acts' and 'verbal parts of an act,' in which the statement itself affects the legal rights of the parties or is a circumstance bearing on conduct affecting their rights." "Statements offered as evidence of commands or threats or rules directed to the witness, rather than for the truth of the matter asserted therein, are not hearsay." *United States v. Bellomo,* 176 F.3d 580, 586 (2d Cir.1999). The value of such things as evidence is not in the truthfulness of any representations they make about some external condition in the world — in the way that a statement that "John killed Dave," "I saw John kill Dave," or "I think John killed Dave," assert the fact that John killed Dave, and that fact, not the statement about the fact, is the relevant evidence — but, rather, their relevance as evidence comes from the words themselves. A question or declaration that cannot reasonably be construed to be an assertion, either express or implied, is not hearsay. *See United States v. Summers*, 414 F.3d 1287, 1300 (10th Cir. 2005).

The United States is confident that during this trial it will lay the proper FRE 801(d)(2)(E) foundation for the identified statements, in no small part through the witnesses themselves, and for any other potential FRE 801(d)(2)(E) statements that may implicate the Defendant that the government cannot predict at this time.

WHEREFORE, the government requests that the court consider the proffered foundation and statements presented here and at the hearing and find the Defendant, "Scotty Be," Ascherin, Gifford, Jones and Presbury were members of the conspiracy, and that the statements set forth were made in furtherance of the conspiracy and further recognize that due to the fluid nature of witness testimony, there may be additional statements elicited at trial.

DATED this 21st day of October 2023.

ERIC J. HEIMANN
Attorney for the United States
Acting under Authority Conferred by 28 U.S.C. § 515

By: /s/ *Timothy J. Forwood*
TIMOTHY J. FORWOOD
Assistant United States Attorney

By: /s/ *Paige Hammer*
PAIGE HAMMER
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of October 2023, the foregoing was electronically filed and consequently served on defense counsel.

/s/ *Andi M. Shaffer*
For the United States Attorney's Office